SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Email: mskapik@skapiklaw.com
Geralyn L. Skapik (SBN 145055)
Email: gskapik@skapiklaw.com
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

SOUTHERN CALIFORNIA LAWYERS GROUP
Eric Christopher Morris (SBN 243425)
Email: emorris@lawsclg.com
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404

Attorneys for Plaintiffs,
LINDA DESOUCY, an individual and as
Special Administrator of the Estate of STEVEN ALAN PUSKAR,
JASON PUSKAR and ALAN PUSKAR

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| LINDA DESOUCY, an individual and as Special Administrator of the Estate of STEVEN ALAN PUSKAR; JASON PUSKAR, an individual; and ALAN PUSKAR, an individual. | Case No. |
| | **COMPLAINT** |
| Plaintiffs. | 1. 42 U.S.C. §1983 (Eighth Amendment) |
| vs. | 2. 42 U.S.C. §1983 (*Monell*- Failure to train and supervise) |
| | 3. 42 U.S.C. §1983 (*Monell*- Unconstitutional Practices, Policies and Procedures) |
| COUNTY OF SAN BERNARDINO; SHANNON D. DICUS, an individual; ROBERT TROSTLE, an individual, MICHAEL KEVIN FOLLETT, an individual; and DOES 1 through 10, inclusive, | 4. 42 U.S.C. § 1983 (Fourteenth Amendment – Unlawful Interference with Familial Relationship) |
| | 5. 42 U.S.C. § 1983 (Eighth and Fourteenth Amendments – Denial of Medical Care) |
| | 6. 42 U.S.C. § 1983 (Fourteenth Amendment – Substantive Due Process) |
| Defendants. | 7. 42 U.S.C. § 1983 (Eight and/or Fourteenth Amendments – Deliberate Indifference) |
| | 8. Negligence |

Brandon Puskar, an individual, Karen McIntosh, an individual.

Nominal DEFENDANTS

9. Wrongful Death (C.C.P. §§ 377.60-377.62)
10. Survival Action (C.C.P. §§ 377.30-377.34)
11. Civil Code § 52.1 (Bane Act)
12. Government Code § 845.6
13. Injunction (C.C.P. § 526)

**DEMAND FOR JURY TRIAL**

Plaintiffs LINDA DESOUCY, as an individual and as Special Administrator of the ESTATE OF STEVEN ALAN PUSKAR, JASON PUSKAR, and ALAN PUSKAR (collectively "Plaintiffs"), allege as follows:

**PARTIES**

1.     This is an action brought under 42 U.S.C. § 1983 to recover damages for DEFENDANTS' violation of PLAINTIFFS' constitutional rights, which ultimately lead to the death of 47-year-old STEVEN ALAN PUSKAR ("DECEDENT").

2.     STEVEN ALAN PUSKAR ("DECEDENT") was a 47-year-old San Bernardino Resident and decorated U.S. Air Force Veteran.

3.     Plaintiff LINDA DESOUCY ("LINDA") is the mother of DECEDENT and a resident of Riverside County, California

4.     Plaintiff LINDA DESOUCY ("LINDA") is the special administrator of the Estate of Steven Alan Puskar.

5.     The Riverside Superior Court formally issued an order appointing Plaintiff LINDA DESOUCY ("LINDA") as Special Administrator on June 9, 2023 (Probate Action, Riverside Superior Court, Case Number, PRR12301209).  The Riverside Superior Court issued the Special Administrator orders on June 29, 2023.

6.     Plaintiff ALAN PUSKAR ("ALAN") is the father of DECEDENT and a resident of Riverside County, California.

7.     Plaintiff JASON PUSKAR ("JASON") is the brother of DECEDENT and a resident of Riverside County, California.

8.     Defendant BRANDON PUSKAR ("BRANDON") is an individual and a resident of Gulfport, Mississippi.  He is the estranged son of DECEDENT and, based on information and belief, does not want to be joined as a Plaintiff in this action.  He is, therefore, joined as a nominal Defendant.

9.     Defendant KAREN MCINTOSH ("MCINTOSH") is an individual and a resident of Riverside County.  Ms. Mcintosh claims she is the alleged, but not confirmed, wife of DECEDENT and is therefore, joined as a nominal Defendant.

10.     Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a political subdivision of the State of California.

11.     The San Bernardino Sheriff's Department ("SBSD") is a COUNTY Department that provides law-enforcement services within the COUNTY.  SBSD operates COUNTY jails.

12.     West Valley Detention Center ("WVDC" or "WEST VALLEY") is a COUNTY-owned jail operated by SBSD.

13.     Defendant SHANNON D. DICUS ("DICUS") is an individual who is the COUNTY Head Sheriff.  DICUS is sued in his individual capacity and in his official capacity.

14.     Defendant ROBERT TROSTLE ("TROSTLE") is an individual who is the SBSD Captain operating the WVDC.  TROSTLE is sued in his individual capacity and in his official capacity.

15.     Defendant MICHAEL KEVIN FOLLETT ("FOLLETT") is an individual and resident of San Bernardino County. MICHAEL KEVIN FOLLETT is a retired San Bernardino County Sheriff Department Sergeant who served as a POST credentialed Deputy Sheriff for the SBSD from 1976 through 2007.  On October 13, 2022, FOLLETT was arrested and charged with the murder of STEVEN ALAN PUSKAR. FOLLETT is sued in his individual capacity.

16.     The true names and capacities of Defendants DOES 1-10 are unknown to Plaintiffs who, therefore, sue these DOE Defendants by such fictitious names.  DOES 1-

10 are law-enforcement officers, deputies, jail staff, medical providers, civilian employees, agents, and employees of Defendant COUNTY. When Plaintiffs learn their true identities and capacities, Plaintiffs will amend this Complaint.

17.    Defendants DICUS, TROSTLE, and DOES 1-10 were, at all times mentioned in this Complaint, acting under color of state law.

## JURISDICTION AND VENUE

18.    The Court has jurisdiction over Plaintiffs Title 42, section 1983 and 1988 claims pursuant to Title 28 U.S.C. sections 1331 and 1343.  The Court has supplemental jurisdiction over Plaintiffs state-law claims.

19.    Venue is proper in the Central District of California under 28 U.S.C. section 1391(b) because Plaintiffs claims arise out of the acts of DICUS, TROSTLE, SBSD, and COUNTY in the County of San Bernardino, State of California.

## PRESENTATION OF WRITTEN CLAIM

20.    Plaintiffs timely and properly filed tort claims pursuant to California *Government Code* section 910 et seq. on December 9, 2022.  Defendants denied all claims on January 18, 2023.

## STATEMENT OF FACTS

21.    STEVEN ALAN PUSKAR was a diagnosed mentally impaired US Air Force veteran. DEFENDANTS housed STEVEN at their jail facility and STEVEN was reliant upon DEFENDANTS for his care.

22.    LINDA, ALAN, and JASON all shared a close familiar bond with STEVEN.  They supported each other spiritually, emotionally, financially, socialized together, cared for each other, spent their days in each other's company, and were each other's support system.

23.    STEVEN was booked into WVDC on or about June 29, 2021, as a pre-trial detainee. At the time of the events that gave rise to this complaint, STEVEN was charged, but not convicted of a crime.  During his July 19, 2021, criminal court hearing, STEVEN'S counsel filed a declaration as to the doubt of STEVEN'S mental health and

Judge David Mazurek suspended STEVEN'S criminal proceedings. A September 7, 2021, court order referred STEVEN to the San Bernardino County Mental Health Director for placement into a mental health recovery program. On October 14, 2021, the court ordered STEVEN "to continue involuntary medication."

24.    The criminal court advised Defendants in writing that STEVEN had significant mental impairments. Given STEVEN'S documented mental health issues and court-ordered medication regiment, STEVEN was to be housed in a single person cell in WVDC, Unit 15, referred to as the jail secured housing unit or alternative sheltered housing unit.

25.    On, September 24, 2022, Yucaipa Police arrested MICHAEL KEVIN FOLLETT (FOLLETT) on six (6) felony charges and one misdemeanor charge involving unlawful use of tear gas, being a felon in possession of a firearm and ammunition, felony assault, exhibiting a knife and resisting arrest. DEFENDANTS booked FOLLETT into High Desert Detention Center. DEFENDANTS then transferred FOLLETT to the WEST VALLEY DETENTION CENTER.

26.    On or about the time of admission into WVDC, DEFENDANTS were provided with written documentation that FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5) felony obstructing or resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and (7) misdemeanor charge of battery against a peace officer.

27.    On or about the time of admission, DEFENDANTS were provided with written documentation that FOLLETT was a vicious and violent criminal. Moreover,

DEFENDANTS were provided with the Criminal Court's September 7, 2021, and October 14, 2021, court orders identifying STEVEN suffered from mental health issues.

28.     Based on the foregoing, DEFENDANTS were required to classify STEVEN to be housed in a single cell without a cellmate, during his entire stay at WEST VALLEY due to his mental status. DEFENDANTS failed to properly classify STEVEN. On October 2, 2022, DEFENDANTS assigned FOLLETT to share a cell with STEVEN.

29.     Since   DEFENDANTS previously employed FOLLETT as a deputy sheriff for 31 years, DEFENDANTS were required to classify and house FOLLETT in a designated former law enforcement protective custody unit within WVDC. Within WVDC is Unit 13, which is a protective unit, designed to house former law enforcement officers. DEFENDANTS failed to properly classify FOLLETT as a former law enforcement. DEFENDANTS failed to properly house FOLLETT in protective custody. FOLLETTT should have never been housed with any vulnerable mentally ill inmates, including STEVEN.

30.     Prior to the events that gave rise to this complaint, DEFENDANTS, DOES inclusive, knew or should have known that FOLLETTT was a convicted violent felon who had a documented history of violent conduct and offenses, as well as the fact that FOLLETT was ordered by the court to undergo a competency evaluation after his mental competency was declared in doubt by his counsel. (*State of Washington v. Follett*, Case Number 16-1-01186-4.)

31.     DEFENDANTS, DOES inclusive, knew or should have known at the time of the incident, DEFENDANTS were under a court-ordered consent decree which mandated that all WVDC mental-health inmates must be housed without a cellmate, in a single-person cell. (*Turner v. County of San Bernardino,* USDC, Cent. D. Calif.  5:16-cv-00355-VAP-DTB).  STEVEN was to be housed in a single cell due to his *mental illness* and not to be housed with another inmate. DEFENDANTS and DOES inclusive, knew or should have known at the time of the events that gave rise to this complaint that

FOLLETTT was a *violent inmate* who had a history of convictions for violent felonies and offenses and to whom violence came easily, and who therefore should have been housed in a different unit to prevent violence upon another inmate.

32.    On or about October 2, 2022, DEFENDANTS placed FOLLETT in STEVEN's cell. Sometime later that same date, a commotion arose in the cell which housed STEVEN and FOLLETT. Unprovoked, FOLLETT physically attacked STEVEN, who could not escape from the cell because earlier DEFENDANTS locked the cell door.

33.    STEVEN had suffered multiple injuries including, but not limited to, blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

34.    DEFENDANTS refused to immediately respond to STEVEN's condition despite receiving notice. A significant time elapsed after FOLLETT attacked and beat up STEVEN whereby STEVEN was left alone at the mercy of FOLLETT and was bleeding profusely. DEFENDANTS discovered STEVEN bloody and battered, clinging to life.

35.    Prior to and after FOLLETT attacked STEVEN, DEFENDANTS' Deputies failed to do the required number of timely and mandated physical safety checks upon STEVEN.

36.    While STEVEN was still alive, bleeding profusely, and in serious pain and suffering, DEFENDANTS staged other deputies and medical staff, for an extended period time, and instructed them to do nothing. Upon information and belief, DEFENDANTS' deputies and DEFENDANTS' medical staff refused to render Cardiopulmonary Resuscitation (CPR) because STEVEN was covered with blood, feces and suffering from severe lice infestation. Upon information and belief, DEFENDANTS' deputies interfered with and stopped DEFENDANT'S medical staff from rendering medical care to STEVEN, which resulted in unnecessary exacerbation of

1  STEVEN'S injuries, rendering him brain dead, and ultimately resulting in STEVEN'S

2  death.

3       37.    STEVEN was transported to Arrowhead Regional Medical Center in

4  Colton, California.

5       38.    Upon arrival at Arrowhead Regional Medical Center, the medical staff

6  documented that STEVEN was covered in lice, blood, and feces. Paramedics advised

7  that DEFENDANTS failed to administer CPR to STEVEN, and DEFENDANTS failed

8  to render life saving measures. Lice was emerging from every orifice on STEVEN'S

9  body, including his ears, nose, mouth, scalp, body and rectum. STEVEN'S body had

10  lice visibly crawling all over him.

11       39.    Upon arrival at Arrowhead Regional Medical Center, PLAINTIFFS,

12  LINDA and JASON were denied access to see STEVEN because of the severity of his

13  lice infestation. The doctors notified LINDA and JASON that in order to visit STEVEN,

14  they had to wear protective hospital gear as a result of the lice infestation and fecal

15  contamination that was present on STEVEN'S body.  In fact, each time PLAINTIFFS

16  LINDA and JASON went to see STEVEN, they had to wear protective hospital gear.

17  The doctors notified LINDA and JASON that STEVEN suffered an irreversible anoxic

18  brain injury and had little to no brain activity.

19       40.    The DEFENDANTS' actions revealed their deliberate indifference to

20  STEVEN'S basic humanity and serious medical needs. DEFENDANTS' actions and

21  lack of care subjected STEVEN to unnecessary and wanton infliction of excruciating

22  pain.  DEFENDANTS failed to execute required physical and mental health inmate

23  wellness checks upon STEVEN. DEFENDANTS failed to ensure that STEVEN'S

24  medical, mental, physical, and basic hygiene needs were adequately cared for, so that

25  his body would be clear of lice and fecal matter. DEFENDANTS acted with such

26  reckless disregard causing serious harm to STEVEN and ultimately resulting in

27  STEVEN'S death.

28

41.     After suffering for 7 days, on October 9, 2022, STEVEN ultimately died at the hospital.

42.     FOLLETT has since been charged with the murder of STEVEN.

43.     PLAINTIFFS LINDA and JASON have been attending the criminal proceedings related to the murder of STEVEN by WEST VALLEY DETENTION CENTER inmate MICHAEL KEVIN FOLLETT.

## I.

## FIRST CAUSE OF ACTION

## <u>VIOLATION OF THE EIGHTH AMENDMENT</u>

### [42 U.S.C. § 1983]

(By LINDA as special administrator of the Estate of Steven Alan Puskar Against Defendants DICUS, TROSTLE, and DOES 1-10)

44.     PLAINTIFF repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

45.     DEFENDANTS have a long-documented history of neglecting pre-trial jail inmates with mental health disabilities, which unnecessarily subjected them to death or serious bodily injury. As a result, on February 29, 2016, plaintiff Rahshun Turner sued COUNTY in the matter of *(Turner v. County of San Bernardino, (USDC, Cent. D. Calif.), 5:16-cv-00355-VAP-DTB)*. ("*Turner* Action").  Plaintiffs in the *Turner* Action alleged that COUNTY's policies and practices regularly and foreseeably resulted in the violation of the Eighth Amendment rights of mentally impaired inmates incarcerated in COUNTY jails.  On December 14, 2018, plaintiffs and the COUNTY entered into a consent decree and remedial action (collectively "Consent Decree") in which the COUNTY agreed, and the court ordered that the COUNTY implement remedial actions to prevent further violations of the Eighth Amendment rights of mentally impaired inmates.

46.     Plaintiffs are informed and believe and thereon allege that, although Defendants DICUS and TROSTLE have been aware of continued violations of mentally impaired inmates' Eighth Amendment rights, Defendants DICUS and TROSTLE have deliberately not taken the agreed remedial actions.

47.     As a proximate result of DICUS and TROSTLE's acquiescence in, and deliberate indifference to, the continued unconstitutional conduct of their subordinates, STEVEN in the present case was killed.

48.     STEVEN was a mentally impaired man who was incarcerated under Defendants' care.

49.     On or about June 29, 2021, STEVEN was arrested and transferred to WVDC.

50.     While STEVEN was at WVDC his mental health was declared in doubt by Jude David Mazurek.  Throughout his incarceration, STEVEN was order to "continue involuntary medication." Because STEVEN was considered a mentally impaired inmate, he was required to be housed in a unit reserved for inmates exhibiting mental issues.

51.     On, September 24, 2022, MICHAEL KEVIN FOLLETT (FOLLETT) was arrested by Yucaipa Police on charges of on charges of unlawful use of tear gas, being a felon in possession of a firearm and ammunition, assault, exhibiting a knife and resisting arrest and booked in High Desert Detention Center.  FOLLETT was then transferred to the WEST VALLEY DETENTION CENTER into DEFENDANTS' custody.

52.     DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5) felony obstructing or

resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and
(7) misdemeanor charge of battery against a peace officer.

53.    DEFENDANT DOES 1-10, inclusive, knew or should have known that,
because of his mental impairment, STEVEN was unable to protect himself and was to
have been housed in a single cell in secured housing reserved for inmates with mental
issues and not housed in a cell with another inmate, especially an inmate known to be
violent.

54.    On October 2, 2022, in deliberate indifference to STEVEN'S Eighth
Amendment rights, and with reckless disregard for STEVEN'S safety, DEFENDANTS
assigned FOLLETT to share a cell with STEVEN.

55.    DEFENDANTS knew or should have known that FOLLETT'S vicious and
violent propensities caused STEVEN'S life to be in immediate peril.

56.    DEFENDANTS knew or should have known that the placement of
FOLLETT in the same cell as STEVEN violated STEVEN'S Eighth Amendment rights
and the *Turner* Action Consent Decree.

57.    Sometime later, on October 2, 2022, a commotion arose in the cell which
housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered
bloody and battered. STEVEN had suffered multiple injuries including, but not limited
to, blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye,
contusion above the right eye, left front tooth missing, two subgaleal hematoma,
posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken
bones.

58.    On or about the time immediately prior to and after the incident,
DEFENDANT Deputies failed to do timely safety checks.

59.    After the incident, DEFENDANT deputies and medical staff were slow to
respond. Upon information and belief, DEFENDANT deputies and medical staff
refused to render immediate Cardiopulmonary Resuscitation (CPR) because STEVEN
was covered in extensive lice, blood, and feces.

60.     At the time of the incident, the cell was locked by DEFENDANTS, with only STEVEN and FOLLETT inside.

61.     STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

62.     Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were employed and no aid was rendered.  LICE was emerging from every orifice on STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

63.     On October 9, 2022, STEVEN ultimately died because of the injuries sustained from FOLLETT.

64.     As a direct and proximate result of Defendants' actions, failures to act, and deliberate indifference, STEVEN was subjected to and did in fact *suffer cruel and unusual punishment* culminating in his death.

65.     Defendants DICUS and TROSTLE, at all times relevant, knew of the long-standing failure of the COUNTY jails, and WVDC in particular, to provide the care for the mentally impaired required by the Eighth Amendment.  Throughout their tenures, DICUS and TROSTLE have failed to take substantive measures to correct the deficiencies at COUNTY jails, even though large numbers of incidents, such as one alleged herein, have shown a dire need for corrective actions.  DICUS and TROSTLE have been deliberately indifferent to the mistreatment of mentally impaired inmates in COUNTY jails.

66.     DICUS's continued failure to ensure that the SBSD complied with the Consent Decree constitutes deliberate indifference to the Eighth Amendment rights of the inmates and detainees.  DICUS'S deliberate indifference was a proximate cause of STEVEN's injuries.

67.    TROSTLE's continued failure to ensure that WVDC complied with the Consent Decree constitutes deliberate indifference to the Eighth Amendment rights of the inmates and detainees.  TROSTLE's deliberate indifference was a proximate cause of STEVEN's injuries.

## II.

## SECOND CAUSE OF ACTION

## MONELL - FAILURE TO TRAIN AND SUPERVISE

## [42 U.S.C. § 1983]

(By LINDA as special administrator of the Estate of Steven Alan Puskar Against Defendants DICUS, TROSTLE, and DOES 1-10)

68.    PLAINTIFF repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

69.    Through prior lawsuits, the Consent Decree entered in the *Turner* Action, and prior inmate complaints, DICUS and TROSTLE were aware of numerous incidents at WVDC where jail staff failed to properly screen incoming inmates for mental impairments and segregate inmates having mental impairments.  DICUS and TROSTLE were aware that such failures resulted in violations of the Eighth Amendment and physical injuries to mentally impaired inmates.

70.    In deliberate indifference to the Eighth Amendment rights of mentally impaired inmates, and with reckless disregard for the safety of mentally impaired inmates, DEFENDANTS DICUS and TROSTLE failed to provide WVDC staff with training and supervision that is adequate to prevent violations of the Eighth Amendment.

71.    On, September 24, 2022, MICHAEL KEVIN FOLLETT (FOLLETT) was arrested by Yucaipa Police on charges of on charges of unlawful use of tear gas, being a felon in possession of a firearm and ammunition, assault, exhibiting a knife and resisting

arrest and booked in High Desert Detention Center.  FOLLETT was then transferred to the WEST VALLEY DETENTION CENTER into DEFENDANTS' custody.

72.     DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5) felony obstructing or resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and (7) misdemeanor charge of battery against a peace officer.

73.     On October 2, 2022, as a proximate result of DICUS and TROSTLE's failure to provide training and supervision to WVDC staff that is adequate to prevent violations of the Eighth Amendment and assaults of mentally impaired inmates, DEFENDANT DOES 1-10 assigned FOLLETT to share a cell with STEVEN.

74.     Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered a gratuitous number of injuries including but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

75.     On or about the time immediately prior to and after the incident, DEFENDANT Deputies failed to do timely safety checks.

76.     After the incident, DEFENDANT deputies and medical staff were slow to respond. Upon information and belief, DEFENDANT deputies and medical staff refused to render immediate Cardiopulmonary Resuscitation (CPR) because STEVEN was covered in extensive LICE, blood and feces.

77.    STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

78.    Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were employed and no aid was rendered.  LICE was emerging from every orifice on STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

79.    On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

80.    The deliberate failure of DEFENDANTS DICUS and TROSTLE to provide training and supervision to COUNTY jail staff adequate to prevent violations of the Eighth Amendment was a substantial cause of STEVEN's death.

### III.

### THIRD CAUSE OF ACTION

### *MONELL* - UNCONSTITUTIONAL POLICIES, PRACTICES, AND CUSTOMS

### [42 U.S.C. § 1983]

(By LINDA as special administrator of the Estate of Steven Alan Puskar Against Defendants DICUS, TROSTLE, and DOES 1-10)

81.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

82.    Defendants COUNTY and DICUS have longstanding policies, practices, and customs of providing training to COUNTY jail staff members that is inadequate to prevent violations of the Eighth Amendment.

83.    Defendants COUNTY and DICUS have longstanding policies, practices, and customs of poorly screening incoming inmates for mental impairments, not treating inmates having serious mental impairments, and not segregating inmates having serious

mental impairments from general jail populations.  These policies amount to deliberate indifference to the Eighth Amendment rights of mentally impaired inmates.

84.     The COUNTY's policies, practices, and customs, and failure to properly screen incoming inmates for mental impairments, to treat inmates having serious mental impairments, and to segregate inmates having serious mental impairments from general jail populations came to light in multiple prior lawsuits including the *Turner* Action.  To resolve the *Turner* Action, the County entered into a Consent Decree and remedial plan.

85.     Unfortunately, the Consent Decree did not cause Defendants to alter their policies, practices, and customs regarding the treatment of mentally impaired inmates in COUNTY jails.

86.     In deliberate indifference to inmates' Eighth Amendment rights, and with reckless disregard for the safety of mentally impaired inmates, Defendants continue to provide inadequate training to COUNTY jail staff to prevent violations of the Eighth Amendment and the Consent Decree, continue to poorly screen incoming inmates for mental impairments, fail to treat inmates with serious mental impairments, and fail to segregate inmates having serious mental impairments from the general jail populations.

87.     STEVEN came to WVDC with a medical directive that he was to be housed separately from other inmates (in his own cell) while at WVDC.

88.     STEVEN had an Eighth Amendment right not to be subjected to cruel and unusual punishment while incarcerated at WVDC.

89.     Consist with COUNTY policies, practices, and customers, Defendants DOE 1-10 inadequately screened STEVEN for mental impairments.

90.     On, September 24, 2022, MICHAEL KEVIN FOLLETT (FOLLETT) was arrested by Yucaipa Police on charges of on charges of unlawful use of tear gas, being a felon in possession of a firearm and ammunition, assault, exhibiting a knife and resisting arrest and booked in High Desert Detention Center.  FOLLETT was then transferred to the WEST VALLEY DETENTION CENTER into DEFENDANTS' custody.

91.    DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5) felony obstructing or resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and (7) misdemeanor charge of battery against a peace officer.

92.    Even though STEVEN was designated to have his own cell while incarcerated at WEST VALLEY, on October 2, 2022, FOLLETT was assigned to share a cell with STEVEN.

93.    PLAINTIFFS are informed and, on that basis, allege that FOLLETT is a vicious and violent criminal.

94.    DEFENDANTS, DOES inclusive, knew or should have known at that time that FOLLETT was a violent inmate who had a history of violent conduct and offenses, and to whom violence came easily.

95.    DEFENDANTS, DOES inclusive, knew or should have known at that time that STEVEN was to be housed in a single cell due to his mental illness and not to be housed with another inmate, especially an inmate who had a history of violent conduct and offenses, and who was known to be violent at that time. Defendants and DOES inclusive, knew or should have known at that time that FOLLETT was a violent inmate who had a history of violent conduct and offenses, and to whom violence came easily, and who therefore should have been housed in a single cell to prevent violence upon another inmate.

96.    Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered a gratuitous number of injuries including

COMPLAINT

but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

97.    On or about the time immediately prior to and after the incident, Defendant Deputies failed to do timely safety checks.

98.    After the incident, DEFENDANT deputies and medical staff were slow to respond. Upon information and belief, Defendant deputies and medical staff refused to render immediate Cardiopulmonary Resuscitation because STEVEN was covered in extensive lice, blood and feces.

99.    STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

100.    Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were employed and no aid was rendered.  LICE was emerging from every orifice on STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

101.    On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

102.    At the time of the incident, the cell was locked, with only DECEDENT and FOLLETT inside.

103.    Defendants' longstanding policies, practices, and customs of not training COUNTY jail staff adequately to prevent violations of the Eighth Amendment and the Consent Decree, not adequately screening inmates for mental impairments, and not segregating inmates having serious mental impairments from the general jail population were the moving force behind the violations of STEVEN's Eighth Amendment rights. //

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV**.

**FOURTH CAUSE OF ACTION**

<u>**Unlawful Interference with Familial Relationship**</u>

**(Substantive Due Process - Fourteenth Amendment – 42 U.S.C § 1983**

**(By LINDA as special administrator of the Estate of Steven Alan Puskar,**

LINDA, as an individual, ALAN, as an individual, JASON, as an individual

Against All Defendants and DOES 1-10)

104.   Plaintiffs incorporate by reference the previous paragraphs as though fully set forth herein.

105.   Plaintiffs have a right under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from unlawful state interference in their familial relationship with STEVEN.

106.   As a result of DEFENDANTS' deliberate indifference, and failure to provide needed medical care to STEVEN, he died. The conduct of DEFENDANTS and DOES 1-10 was unreasonable under the circumstances, not further or related to any legitimate penal or law enforcement interest or objective, conscious shocking, and exhibited a deliberate indifference to the decedent's rights. PLAINTIFFS were thereby deprived of their constitutional rights and familial relationship with their son and brother.

107.   As a direct and proximate cause of the acts of DEFENDANTS and DOES 1-10, PLAINTIFFS have been deprived of the life-long comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives. PLAINTIFFS are also claiming funeral and burial expenses and a loss of financial support.

108.   The conduct of DEFENDANTS and DOES 1-10 was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights

and safety of Decedent and PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS and DOES 1-10.

109.    Accordingly, DEFENDANTS and DOES 1-10 each are liable to PLAINTIFFS for compensatory and punitive damages, including wrongful death damages, under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.60. PLAINTIFFS also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988.

## V.

### FIFTH CAUSE OF ACTION

### DENIAL OF MEDICAL CARE

### (Eighth and Fourteenth Amendments - 42 U.S.C. § 1983)

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against all Defendants)

110.    Plaintiffs repeat and re-allege each and every of the foregoing allegations above with the same force and effect as if fully set forth herein.

111.    At all times relevant herein, STEVEN was neither tried nor convicted of the charges underlying the arrest that led to his incarceration at West Valley Detention Center.

112.    "A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Brown v. Plata*, 131 S.Ct. 1910, 1928 (2011). Accordingly, the Fourteenth Amendment to the United States Constitution protects the right of pretrial detainees to adequate medical care. Claims of pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996); *Gibson v. Cnty. Of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002).

113.    Throughout the duration of STEVEN's incarceration, he had the established right to not have employees and agents of Defendants remain deliberately

indifferent to his serious medical needs, including his physical and mental health and psychiatric needs. As set forth below, STEVEN's serious medical needs were obvious, and he did not refuse medical assistance.

114.    Plaintiffs are informed and believe and thereon allege that STEVEN was medically screened by COUNTY personnel when he arrived at West Valley Detention Center on or about June 29, 2021. COUNTY personnel learned that STEVEN suffered from a mental illness.

115.    When STEVEN was discovered beaten, while in Defendants' custody and care, he was found to be completely covered in blood, feces, and lice. STEVEN had lice visible on all parts of his body and infesting every orifice of his body.

116.    Such a grotesque and pervasive lice infestation could only arise from an intentional, deliberate and continuous indifference towards the physical and mental health of STEVEN by Defendants.

117.    The aforementioned failure by Defendants to provide proper and necessary medical care caused STEVEN serious bodily harm. The aforementioned denial of medical care violated STEVEN's right to Due Process under the Fourteenth Amendment and violated the decedent's right to be free from cruel and unusual punishment in violation of the Eighth Amendment.

118.    Prior to his untimely death while in Defendants' custody and care, STEVEN suffered immense pain, suffering, and distress due to the deliberate indifference of Defendants towards STEVENS physical and mental health, including allowing swarms of lice to infest STEVENS body.

119.    Defendants made the intentional decision with respect to the condition under which STEVEN was confined and these conditions put STEVEN in substantial risk of suffering serious harm. By not taking measures to ensure that basic hygiene needs are met, Defendants caused STEVENS injuries. Intentionally neglecting STEVEN to a point where he is covered in lice and feces so that no one on Defendants staff would render medical aid because of his physical condition is despicable.

120.   The conduct of the aforementioned Defendants was intentional, malicious, oppressive, and in reckless disregard for the rights and safety of STEVEN, and therefore warrants the imposition of exemplary and punitive damages.

121.   Accordingly, Defendants each are liable to Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988.

## VI.

## SIXTH CAUSE OF ACTION

## SUBSTANTIVE DUE PROCESS

## (Fourteenth Amendment - 42 U.S.C. § 1983)

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against All Defendants)

122.   Plaintiffs repeat and re-allege each and every of the foregoing allegations above with the same force and effect as if fully set forth herein.

123.   Defendants DICUS, TROSTILE, and DOES 1 through 10, inclusive, at all times relevant, acted under color of state law. By engaging in the foregoing conduct, Defendants DICUS, TROSTILE, and DOES 1 through 10, inclusive, deprived Plaintiffs of their right to a familial relationship with STEVEN in such a manner as to shock the conscience, including by deny STEVEN's medical care and deliberate indifference to STEVEN's mental and physical health, and by affirmatively placing STEVEN in harms way by forcing him to be cellmates with FOLLETT, all of which caused injuries that resulted in STEVEN's death. This conduct violated Plaintiff's rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution.

124.   By engaging in the foregoing conduct, DICUS, TROSTILE, and DOES 1 through 10, inclusive, acted with deliberate indifference to the constitutional rights of STEVEN and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

125.    The conduct of the aforementioned Defendants was malicious, oppressive, and in reckless disregard for the rights and safety of STEVEN, and therefore warrants the imposition of exemplary and punitive damages.

126.    Accordingly, Defendants each are liable to Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988.

## VII.

### SEVENTH CAUSE OF ACTION

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### (Eighth and/or Fourteenth Amendment - 42 U.S.C. § 1983)

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against All Defendants)

127.    Plaintiffs repeat and re-allege each and every of the foregoing allegations above with the same force and effect as if fully set forth herein.

128.    Defendants DICUS, TROSTILE, and DOES 1 through 10, inclusive, while working for the COUNTY, and acting within the course and scope of their duties, had custody of STEVEN in West Valley Detention Center.

129.    While STEVEN was in custody, Defendants caused FOLLETT to be placed into STEVEN's cell as his cellmate, despite knowing of FOLLETT's violent nature and tendencies and despite STEVEN being known to suffer from mental health issues.

130.    While STEVEN was in custody, Defendants allowed his physical and mental health to seriously deteriorate, causing serious medical needs.

131.    Defendants made the intentional decision with respect to the condition under which STEVEN was confined and these conditions put STEVEN in substantial risk of suffering serious harm. By not taking measures to ensure that basic hygiene needs are met, Defendants caused STEVENS injuries.  Intentionally neglecting

COMPLAINT

STEVEN to a point where he is covered in lice and feces so that no one on Defendants staff would render medical aid because of his physical condition is despicable.

132.   Defendants were deliberately indifferent to the serious physical and medical needs of STEVEN.

133.   Defendants knew of STEVEN's serious physical and medical needs, especially since they were the ones that caused the circumstances that created STEVEN's serious medical needs in the first place.

134.   Despite knowing of STEVEN's serious medical needs, Defendants disregarded them by failing to take reasonable measures to address them, including failing to provide timely medical care for STEVEN.

135.   As a result of Defendants' failure to provide timely medical care for STEVEN, and as a result of their deliberate indifference to the serious medical needs of STEVEN, he was harmed.

136.   Defendants' deliberate indifference to the serious medical needs of STEVEN constituted violations of STEVEN's rights under the Eighth and Fourteenth Amendments of the United States Constitution.

137.   Defendants are liable for STEVEN's injuries because they were either integral participants to the denial of timely medical care or they failed to intervene to prevent these violations.

138.   The conduct of the aforementioned Defendants was malicious, oppressive, and in reckless disregard for the rights and safety of STEVEN, and therefore warrants the imposition of exemplary and punitive damages.

## VIII.

## EIGHTH CAUSE OF ACTION

## <u>NEGLIGENCE</u>

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against Defendants COUNTY, DICUS, TROSTLE, and DOES 1-10)

139.  Plaintiffs incorporate by reference the previous paragraphs as though fully set forth herein.

140.  STEVEN was a mentally impaired man. STEVEN was incarcerated under Defendants' care and was pre-conviction.

141.  As jailers, DEFENDANTS TROSTLE and DOES 1-10 were in a special relationship with STEVEN and owed STEVEN a legal duty to protect him from foreseeable harm.

142.  STEVEN came to WVDC with a medical directive   that he was to be housed separately from other inmates (in his own cell) while incarcerated at WVDC.

143.  On, September 24, 2022, MICHAEL KEVIN FOLLETT (FOLLETT) was arrested by Yucaipa Police on charges of on charges of unlawful use of tear gas, being a felon in possession of a firearm and ammunition, assault, exhibiting a knife and resisting arrest and booked in High Desert Detention Center.  FOLLETT was then transferred to the WEST VALLEY DETENTION CENTER into DEFENDANTS' custody.

144.  DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5) felony obstructing or resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and (7) misdemeanor charge of battery against a peace officer.

145.   It was foreseeable that if FOLLETT was put into STEVEN's cell that FOLLETT would attack STEVEN.

146.   It was foreseeable that, as a consequence of his mental impairments, STEVEN would be unable to protect himself.

147.   Defendants TROSTLE and DOES 1-10 breached the legal duty of care owed to STEVEN when they put FOLLETT in STEVEN's cell.

148.   When Defendants TROSTLE and DOES 1-10 negligently put FOLLETT in STEVEN's cell, they were acting within the scope of their employment as COUNTY Sheriff's deputies and jail staff.

149.   As a proximate result of DEFENDANTS' breach, STEVEN was critically injured when he was predictably attacked by FOLLETT.  At the time of the attack, the cell was locked and only STEVEN and FOLLETT were inside.

150.   DEFENDANTS, Does inclusive, knew or should have known at that time that STEVEN was to be housed in a single cell due to his mental illness and not to be housed with another inmate, especially an inmate who had a history of violent conduct and offenses, and who was known to be violent at that time. DEFENDANTS and DOES inclusive, knew or should have known at that time that FOLLETT was a violent inmate who had a history of violent conduct and offenses, and to whom violence came easily, and who therefore should have been housed in a single cell to prevent violence upon another inmate.

151.   Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered multiple injuries including but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

152.    On or about the time immediately prior to and after the incident, Defendant Deputies failed to do timely safety checks.

153.    After the incident, Defendant deputies and medical staff were slow to respond. Upon information and belief, DEFENDANT deputies and medical staff refused to render immediate Cardiopulmonary Resuscitation (CPR) because STEVEN was covered in extensive LICE, blood and feces.

154.    STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

155.    Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were employed and no aid was rendered.  LICE was emerging from every orifice on STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

156.    On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

157.    Public employees such as Defendants TROSTLE and DOES 1-10 are liable for injuries caused by their acts or omissions to the same extent as a private person. *Government Code* § 820(a).

158.    COUNTY is vicariously liable for injuries caused by the alleged acts and omissions of Defendants TROSTLE and DOES 1-10 because Defendants committed such acts and omissions within the scope of their COUNTY employment.  *Government Code* § 815.2(a).

# IX.

## NINTH CAUSE OF ACTION

## **WRONGFUL DEATH**

(By LINDA, as an individual, ALAN, as an individual, JASON, as an individual Against Defendants BRANDON, COUNTY, DICUS, TROSTLE, FOLLETT and DOES 1-10)

159.   Plaintiffs incorporate by reference the preceding paragraphs 1-118 as though fully set forth herein.

160.    Plaintiff LINDA DESOUCY ("LINDA") is the Mother and successor in interest of decedent STEVEN ALAN PUSKAR ("STEVEN" or "DECEDENT"). STEVEN ALAN PUSKAR was a 47-year-old San Bernardino Resident. Plaintiff ALAN PUSKAR ("ALAN") is the Father of decedent STEVEN ALAN PUSKAR. Plaintiff JASON PUSKAR ("JASON") is the natural born sibling of decedent STEVEN ALAN PUSKAR.  Plaintiffs bring this suit pursuant to California Code of Civil Procedure sections 377.30 and 377.60.

161.   STEVEN was a mentally impaired man who was incarcerated under Defendants' care.

162.   As jailers, Defendants TROSTLE and DOES 1-10 were in a special relationship with STEVEN and owed STEVEN a legal duty to protect him from foreseeable harm.

163.   STEVEN came to WVDC with a medical directive that he was to be housed separately from other inmates (in his own cell) while incarcerated at WVDC.

164.   DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of

a felony conviction of being in possession of ammunition; (5) felony obstructing or resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and (7) misdemeanor charge of battery against a peace officer.

165.   DEFENDANTS DOES 1-10, inclusive, knew or should have known that, as a consequence of his mental impairment, STEVEN was unable to protect himself and was to have been housed in a single cell and not housed with another inmate, especially an inmate known to be violent.

166.   On October 2, 2022, in deliberate indifference to STEVEN's Eighth Amendment rights, and with reckless disregard for STEVEN's safety, Defendants assigned FOLLETT to share a cell with STEVEN.

167.   DEFENDANTS knew or should have known that FOLLETT's vicious and violent propensities caused STEVEN'S life to be in immediate peril.

168.   DEFENDANTS knew or should have known that the placement of FOLLETT in the same cell as STEVEN violated STEVEN's Eighth Amendment rights and the Turner Action Consent Decree.

169.   Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered a gratuitous number of injuries including but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

170.   On or about the time immediately prior to and after the incident, DEFENDANTS Deputies failed to do timely safety checks.

171.   Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were employed and no aid was rendered.  LICE was emerging from every orifice on

STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

172.    After the incident, Defendant deputies and medical staff were slow to respond. Upon information and belief, Defendant deputies and medical staff refused to render immediate Cardiopulmonary Resuscitation (CPR) because STEVEN was covered in extensive lice, blood and feces.

173.    At the time of the incident, the cell was locked by Defendants, with only STEVEN and FOLLETT inside.

174.    STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

175.    On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

176.    It was foreseeable that if FOLLETT was put into STEVEN's cell that FOLLETT would attack STEVEN.

177.    It was foreseeable that, as a consequence of his mental impairments, STEVEN would be unable to protect himself.

178.    DEFENDANTS TROSTLE and DOES 1-10 breached the legal duty of care owed to STEVEN when they put FOLLETT in STEVEN's cell.

179.    As a proximate result of DEFENDANTS' breach, STEVEN was critically injured when he was predictably attacked by FOLLETT.  At the time of the attack, the cell was locked and only STEVEN and FOLLETT were inside.

180.    As a proximate result of DEFENDANTS' negligence and STEVEN's wrongful death, Plaintiffs suffered a loss of financial support.

181.    As a proximate result of DEFENDANTS' negligence and STEVEN's wrongful death, Plaintiffs suffered severe emotional distress and loss of affection, comfort, counseling, companionship, and mental support.

182.   As a proximate result of DEFENDANTS' negligence and STEVEN's wrongful death, PLAINTIFFS suffered damages in the form of funeral and burial expenses.

183.   Public employees such as DEFENDANTS TROSTLE and DOES 1-10 are liable for injuries caused by their acts or omissions to the same extent as a private person.  *Government Code* § 820(a).

184.   COUNTY is vicariously liable for injuries caused by the alleged acts or omissions of Defendants TROSTLE and DOES 1-10 because DEFENDANTS committed such acts and omissions within the scope of their COUNTY employment. *Government Code* § 815.2(a).

## X.
### TENTH CAUSE OF ACTION
### <u>SURVIVAL ACTION</u>

(By LINDA as special administrator of the Estate of Steven Alan Puskar Against Defendants COUNTY, DICUS, TROSTLE, FOLLETT and DOES 1-10)

185.   Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

186.   Plaintiff LINDA DESOUCY ("LINDA") is the Mother and successor in interest of decedent STEVEN ALAN PUSKAR ("STEVEN" or "DECEDENT"). STEVEN ALAN PUSKAR was a 47-year-old San Bernardino Resident. Plaintiff ALAN PUSKAR ("ALAN") is the Father of decedent STEVEN ALAN PUSKAR. Plaintiff JASON PUSKAR ("JASON") is the natural born sibling of decedent STEVEN ALAN PUSKAR.

187.   PLAINTIFFS bring this suit as successors in interest to the decedent pursuant to Cal. Code Civ. Proc. 377.32, 377.30 and 377.60. PLAINTIFFS bring all claims on decedent's behalf and seek survival damages therefore, including punitive

damages where applicable, costs, and reasonable attorneys' fees under both state and federal law.

188.    STEVEN was a mentally impaired man who was incarcerated under Defendants' care.

189.    As jailers, DEFENDANTS TROSTLE and DOES 1-10 were in a special relationship with STEVEN and owed STEVEN a legal duty to protect him from foreseeable harm.

190.    STEVEN came to WVDC with a medical directive that he was to be housed separately from other inmates (in his own cell) while incarcerated at WVDC.

191.    DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3) felony being a felon in possession of a firearm; (4) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5) felony obstructing or resisting an executive officer; (6) felony possession of tear gas by a convicted felon; and (7) misdemeanor charge of battery against a peace officer.

192.    Defendant DOES 1-10, inclusive, knew or should have known that, as a consequence of his mental impairment, STEVEN was unable to protect himself and was to have been housed in a single cell and not housed with another inmate, especially an inmate known to be violent.

193.    On October 2, 2022, in deliberate indifference to STEVEN's Eighth Amendment rights, and with reckless disregard for STEVEN's safety, Defendants assigned FOLLETT to share a cell with STEVEN.

194.    Defendants knew or should have known that FOLLETT's vicious and violent propensities caused STEVEN's life to be in immediate peril.

195.    Defendants knew or should have known that the placement of FOLLETT in the same cell as STEVEN violated STEVEN's Eighth Amendment rights and the Turner Action Consent Decree.

196.    Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered a gratuitous number of injuries including but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

197.    On or about the time immediately prior to and after the incident, Defendant Deputies failed to do timely safety checks.

198.    After the incident, DEFENDANTS' deputies and medical staff were slow to respond. Upon information and belief, Defendant deputies and medical staff refused to render immediate Cardiopulmonary Resuscitation (CPR) because STEVEN was covered in extensive lice, blood and feces.

199.    At the time of the incident, the cell was locked by Defendants, with only STEVEN and FOLLETT inside.

200.    STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

201.    Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were employed and no aid was rendered.  LICE was emerging from every orifice on STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

202.    On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

203.   It was foreseeable that if FOLLETT was put into STEVEN's cell that FOLLETT would attack STEVEN.

204.   It was foreseeable that, as a consequence of his mental impairments, STEVEN would be unable to protect himself.

205.   Defendants TROSTLE and DOES 1-10 breached the legal duty of care owed to STEVEN when they put FOLLETT in STEVEN's cell.

206.   As a proximate result of Defendants' breach, STEVEN was critically injured when he was predictably attacked by FOLLETT.  At the time of the attack, the cell was locked and only STEVEN and FOLLETT were inside.

207.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered a loss of financial support.

208.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered severe emotional distress and loss of affection, comfort, counseling, companionship, and mental support.

209.   As a proximate result of Defendants' breach, STEVEN suffered emotional distress.

210.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered damages in the form of funeral and burial expenses.

211.   Public employees such as Defendants TROSTLE and DOES 1-10 are liable for injuries caused by their acts or omissions to the same extent as a private person. *Government Code* § 820(a).

212.   COUNTY is vicariously liable for injuries caused by the alleged acts or omissions of Defendants TROSTLE and DOES 1-10 because Defendants committed such acts and omissions within the scope of their COUNTY employment.  *Government Code* § 815.2(a).

# XI.

## ELEVENTH CAUSE OF ACTION

## <u>BANE ACT</u>

### [California Civil Code § 52.1]

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against Defendants COUNTY, DICUS, TROSTLE, and DOES 1-10)

213.   Plaintiffs incorporate by reference the preceding paragraphs 1-162 as though fully set forth herein.

214.   STEVEN was a mentally impaired man who was incarcerated under Defendants' care.

215.   Plaintiff LINDA DESOUCY ("LINDA") is the Mother and successor in interest of decedent STEVEN ALAN PUSKAR ("STEVEN" or "DECEDENT"). STEVEN ALAN PUSKAR was a 47-year-old San Bernardino Resident. Plaintiff ALAN PUSKAR ("ALAN") is the Father of decedent STEVEN ALAN PUSKAR. Plaintiff JASON PUSKAR ("JASON") is the natural born sibling of decedent STEVEN ALAN PUSKAR.  Plaintiffs bring this suit pursuant to California Code of Civil Procedure sections 377.30 and 377.60.

216.   STEVEN was a mentally impaired man who was incarcerated under Defendants' care.

217.   As jailers, Defendants TROSTLE and DOES 1-10 were in a special relationship with STEVEN and owed STEVEN a legal duty to protect him from foreseeable harm.

218.   STEVEN came to WVDC with a medical directive   that he was to be housed separately from other inmates (in his own cell) while incarcerated at WVDC.

219.   DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1.) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2.) felony

exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3.) felony being a felon in possession of a firearm; (4.) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5.) felony obstructing or resisting an executive officer; (6.) felony possession of tear gas by a convicted felon; and (7.) misdemeanor charge of battery against a peace officer.

220.    Defendant DOES 1-10, inclusive, knew or should have known that, as a consequence of his mental impairment, STEVEN was unable to protect himself and was to have been housed in a single cell and not housed with another inmate, especially an inmate known to be violent.

221.    On October 2, 2022, in deliberate indifference to STEVEN's Eighth Amendment rights, and with reckless disregard for STEVEN's safety, Defendants assigned FOLLETT to share a cell with STEVEN.

222.    Defendants knew or should have known that FOLLETT's vicious and violent propensities caused STEVEN's life to be in immediate peril.

223.    Defendants knew or should have known that the placement of FOLLETT in the same cell as STEVEN violated STEVEN's Eighth Amendment rights and the Turner Action Consent Decree.

224.    Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered a gratuitous number of injuries including but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

225.    On or about the time immediately prior to and after the incident, Defendant Deputies failed to do timely safety checks.

226.    After the incident, Defendant deputies and medical staff were slow to respond. Upon information and belief, Defendant deputies and medical staff refused to

render immediate Cardiopulmonary Resuscitation because STEVEN was covered in extensive lice, blood and feces.

227.   At the time of the incident, the cell was locked by Defendants, with only STEVEN and FOLLETT inside.

228.   STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

229.   On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

230.   It was foreseeable that if FOLLETT was put into STEVEN's cell that FOLLETT would attack STEVEN.

231.   It was foreseeable that, as a consequence of his mental impairments, STEVEN would be unable to protect himself.

232.   Defendants TROSTLE and DOES 1-10 breached the legal duty of care owed to STEVEN when they put FOLLETT in STEVEN's cell.

233.   As a proximate result of Defendants' breach, STEVEN was critically injured when he was predictably attacked by FOLLETT.  At the time of the attack, the cell was locked and only STEVEN and FOLLETT were inside.

234.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered a loss of financial support.

235.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered severe emotional distress and loss of affection, comfort, counseling, companionship, and mental support.

236.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered damages in the form of funeral and burial expenses.

237.   On October 2, 2022, with deliberate indifference, and with conscious and reckless disregard for STEVEN's safety, security, and Eighth Amendment rights, Defendants TROSTLE and DOES 1-10 assigned FOLLETT to share STEVEN's cell.

238.    Plaintiff LINDA DESOUCY ("LINDA") is the Mother and successor in interest of decedent STEVEN ALAN PUSKAR ("STEVEN" or "DECEDENT"). STEVEN ALAN PUSKAR was a 47-year-old San Bernardino Resident. Plaintiff ALAN PUSKAR ("ALAN") is the Father of decedent STEVEN ALAN PUSKAR. Plaintiff JASON PUSKAR ("JASON") is the natural born sibling of decedent STEVEN ALAN PUSKAR.  Plaintiffs bring this suit pursuant to California Code of Civil Procedure sections 377.30 and 377.60.

239.    STEVEN was a mentally impaired man who was incarcerated under Defendants' care.

240.    As jailers, Defendants TROSTLE and DOES 1-10 were in a special relationship with STEVEN and owed STEVEN a legal duty to protect him from foreseeable harm.

241.    STEVEN came to WVDC with a medical directive   that he was to be housed separately from other inmates (in his own cell) while incarcerated at WVDC.

242.    DEFENDANTS knew FOLLETT was prone to acts of serious physical violence. On September 27, 2022, the San Bernardino County District Attorney charged FOLLETT with (1.) felony assault with a deadly weapon other than a firearm against a public safety officer in a manner likely to cause great bodily injury; (2.) felony exhibition of a firearm or deadly weapon in an attempt to resist arrest; (3.) felony being a felon in possession of a firearm; (4.) felony being a person prohibited by consequence of a felony conviction of being in possession of ammunition; (5.) felony obstructing or resisting an executive officer; (6.) felony possession of tear gas by a convicted felon; and (7.) misdemeanor charge of battery against a peace officer.

243.    Defendant DOES 1-10, inclusive, knew or should have known that, as a consequence of his mental impairment, STEVEN was unable to protect himself and was to have been housed in a single cell and not housed with another inmate, especially an inmate known to be violent.

244.   On October 2, 2022, in deliberate indifference to STEVEN's Eighth Amendment rights, and with reckless disregard for STEVEN's safety, Defendants assigned FOLLETT to share a cell with STEVEN.

245.   Defendants knew or should have known that FOLLETT's vicious and violent propensities caused STEVEN's life to be in immediate peril.

246.   Defendants knew or should have known that the placement of FOLLETT in the same cell as STEVEN violated STEVEN's Eighth Amendment rights and the Turner Action Consent Decree.

247.   Sometime later, on October 2, 2022, a commotion arose in the cell which housed STEVEN and FOLLETT. Upon investigation, the DECEDENT was discovered bloody and battered. STEVEN had suffered a gratuitous number of injuries including but not limited to blunt force injuries to the head and face, peri-orbital ecchymosis to the left eye, contusion above the right eye, left front tooth missing, two subgaleal hematoma, posterior occipital scalp area, pulmonary atelectasis, lacerations, bruises, and broken bones.

248.   On or about the time immediately prior to and after the incident, Defendant Deputies failed to do timely safety checks.

249.   After the incident, Defendant deputies and medical staff were slow to respond. Upon information and belief, Defendant deputies and medical staff refused to render immediate Cardiopulmonary Resuscitation because STEVEN was covered in extensive lice, blood and feces.

250.   At the time of the incident, the cell was locked by Defendants, with only STEVEN and FOLLETT inside.

251.   STEVEN was transported to Arrowhead Regional Medical Center in Colton, California.

252.   Upon arrival at Arrowhead Regional Medical Center the medical staff immediately notice that STEVEN was covered in LICE and feces and was advised by paramedics that no CPR was rendered at the jail facility, no life saving measures were

employed and no aid was rendered.  LICE was emerging from every orifice on STEVEN'S body, including his ears, nose, scalp, body and rectum.  STEVEN'S body had LICE visibly crawling all over him.

253.   On October 9, 2022, STEVEN ultimately died as a result of the injuries sustained from FOLLETT.

254.   It was foreseeable that if FOLLETT was put into STEVEN's cell that FOLLETT would attack STEVEN.

255.   It was foreseeable that, as a consequence of his mental impairments, STEVEN would be unable to protect himself.

256.   Defendants TROSTLE and DOES 1-10 breached the legal duty of care owed to STEVEN when they put FOLLETT in STEVEN's cell.

257.   As a proximate result of Defendants' breach, STEVEN was critically injured when he was predictably attacked by FOLLETT.  At the time of the attack, the cell was locked and only STEVEN and FOLLETT were inside.

258.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered a loss of financial support.

259.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered severe emotional distress and loss of affection, comfort, counseling, companionship, and mental support.

260.   As a proximate result of Defendants' negligence and STEVEN's wrongful death, Plaintiffs suffered damages in the form of funeral and burial expenses.

261.   Public employees such as Defendants TROSTLE and DOES 1-10 are liable for injuries caused by their acts or omissions to the same extent as a private person. *Government Code* § 820(a).

262.   COUNTY is vicariously liable for injuries caused by the alleged acts or omissions of Defendants TROSTLE and DOES 1-10 because Defendants committed such acts and omissions within the scope of their COUNTY employment. *Government Code* § 815.2(a).

263.   STEVEN's beating and death were the proximate result of Defendants' deliberate indifference and conscious and reckless disregard for STEVEN's safety, security, and Eighth Amendment rights.

## XII.
## TWELFTH CAUSE OF ACTION
## <u>FAILURE TO RESPOND TO NEED FOR IMMEDIATE MEDICAL CARE</u>
### [California Government Code § 845.6]

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against Defendants COUNTY, DICUS, TROSTLE, and DOES 1-10)

264.   Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

265.   Upon his arrival to WVDC, it was obvious that STEVEN was mentally impaired and had an immediate and obvious need for medical care.

266.   As a consequence of a medical directive, Defendant DOES 1-10 knew or had reason to know of STEVEN's need for immediate medical care.

267.   STEVEN's medical condition rendered him unable to protect himself from the attacks of other inmates.

268.   In breach of the legal duty of care created by *Government Code* section 845.6, Defendants failed to furnish STEVEN the immediate medical care he needed.

269.   Defendants knew that FOLLETT was a vicious and violent criminal.

270.   Defendants knew or had reason to know that part of the care STEVEN required was a cell having no other inmates.

271.   On October 2, 2022, in breach of the legal duty of care they owed STEVEN, and acting within the scope of their COUNTY employment, Defendants TROSTLE and DOES 1-10 assigned FOLLETT to share a cell with STEVEN.

272.   Later on October 2, 2022, there was a disturbance in the cell holding STEVEN and FOLLETT.  Defendants found STEVEN badly beaten.  STEVEN was

transferred to a local area hospital where he ultimate died as a result of the injuries he sustained from FOLLETT.

273.   Defendants made the intentional decision with respect to the condition under which STEVEN was confined and these conditions put STEVEN in substantial risk of suffering serious harm. By not taking measures to ensure that basic hygiene needs are met, Defendants caused STEVENS injuries.  Intentionally neglecting STEVEN to a point where he is covered in lice and feces so that no one on Defendants staff would render medical aid because of his physical condition is despicable.

274.   STEVEN's injuries and death were the proximate result of Defendants' failure to reasonably summon the immediate medical care that STEVEN and *Government Code* section 845.6 required.

## XIII.
## THIRTEENTH CAUSE OF ACTION
## INJUNCTION
### [California C.C.P. § 526]

(By LINDA as special administrator of the Estate of Steven Alan Puskar

Against Defendants COUNTY, DICUS, TROSTLE, and DOES 1-10)

275.   Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

276.   Defendants COUNTY and DICUS have longstanding policies, practices, and customs of poorly screening incoming inmates for mental impairments, not treating inmates having serious mental impairments, and not segregating inmates having serious mental impairments from general jail populations.  These policies amount to deliberate indifference to the Eighth Amendment rights of mentally impaired inmates.

277.   Consistent with these policies, and in deliberate indifference to STEVEN's Eighth Amendment rights, Defendants did not screen STEVEN for mental impairments when he arrived at WVDC and did not segregate STEVEN from the general inmate population.

278.    Defendants DICUS and TROSTLE provide inadequate training and supervisions to COUNTY jail staff to prevent assaults of mentally impaired inmates and violations of the Eighth Amendment rights of mentally-impaired inmates.

279.    As a proximate result of DICUS and TROSTLE's failure to provide training and supervision to WVDC staff that is adequate to prevent assaults of mentally impaired inmates and violations of the Eighth Amendment rights of mentally-impaired inmates, Defendants DOES 1-10 assigned FOLLETT to share a cell with STEVEN.

280.    As a foreseeable result of the policies, practices, and customs of COUNTY and DICUS, and the failure of DICUS and TROSTLE to provide adequate training and supervision, STEVEN was fatally beaten by FOLLETT.

281.    Without an injunction compelling Defendants to install sufficient numbers of mental-health professionals in COUNTY jails to be able to identify incoming inmates having serious mental impairments, compelling Defendants to treat inmates having serious mental impairments, and compelling Defendants to segregate inmates having serious mental impairments from general jail populations, the violations of inmates' Eighth Amendment rights will continue.

282.    Without an injunction compelling Defendants to provide more training and supervision at COUNTY jails, the violations of Eighth Amendment rights will continue.

283.    Legal remedies are inadequate because a multiplicity of lawsuits would be required to obtain damages for each mentally impaired inmate who suffers a violation of his or her Eighth Amendment rights.

THEREFORE, Plaintiffs prays for judgment against Defendants as follows:

**ON THE FIRST CAUSE OF ACTION (42 U.S.C. § 1983; EIGHTH AMENDMENT)**

1.    For general and special damages;

2.    For pain and mental anguish suffered by STEVEN;

3.      For a preliminary and permanent injunction compelling COUNTY to segregate mentally impaired inmates from general population inmates;

4.      For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

5.      For punitive damages;

6.      For attorney fees pursuant to 42 U.S.C. § 1988;

7.      For costs of suit; and

8.      For such other and further relief as the court deems proper.

**ON THE SECOND CAUSE OF ACTION (MONELL - FAILURE TO TRAIN AND SUPERVISE.**

9.      For general and special damages;

10.     For pain and mental anguish suffered by STEVEN;

11.     For a preliminary and permanent injunction compelling COUNTY to install sufficient numbers of mental-health professionals in COUNTY jails to be able to identify incoming inmates having serious mental impairments;

12.     For a preliminary and permanent injunction compelling COUNTY to provide training and supervision sufficient to enable Sheriff's deputies and jail staff to prevent the violation of Eighth Amendment rights of mentally impaired inmates;

13.     For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

14.     For punitive damages;

15.     For attorney fees pursuant to 42 U.S.C. § 1988;

16.     For costs of suit; and

17.     For such other and further relief as the court deems proper.

## ON THE THIRD CAUSE OF ACTION (42 U.S.C. § 1983 *MONELL* - UNCONSTITUTIONAL Policies, Practices, And Customs)

18.    For general and special damages;

19.    For pain and mental anguish suffered by STEVEN;

20.    For a preliminary and permanent injunction compelling COUNTY to segregate mentally-impaired inmates from general population inmates;

21.    For a preliminary and permanent injunction compelling COUNTY to provide training and supervision sufficient to enable Sheriff's deputies and jail staff to prevent the violation of Eighth Amendment rights of mentally-impaired inmates;

22.    For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

23.    For punitive damages;

24.    For attorney fees pursuant to 42 U.S.C. § 1988;

25.    For costs of suit; and

26.    For such other and further relief as the court deems proper.

## ON THE FOURTH CAUSE OF ACTION (UNLAWFUL INTERFERENCE WITH FAMILIAL RELATIONSHIP)

27.    For general damages suffered by Plaintiffs Steven Puskar, Jason Puskar, Alan Puskar and Linda DeSoucy;

28.    For general and special damages;

29.    For pain and mental anguish suffered by Plaintiffs;

30.    For attorney fees;

31.    For costs of suit; and

32.    For such other and further relief as the court deems proper.

COMPLAINT

**ON THE FIFTH CAUSE OF ACTION (42 U.S.C. § 1983 DENIAL OF MEDICAL CARE (Eighth and Fourteenth Amendments )**

33.     For general and special damages;

34.     For pain and mental anguish suffered by STEVEN;

35.     For a preliminary and permanent injunction compelling COUNTY to segregate mentally impaired inmates from general population inmates;

36.     For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

37.     For punitive damages;

38.     For attorney fees pursuant to 42 U.S.C. § 1988;

39.     For costs of suit; and

40.     For such other and further relief as the court deems proper.

**ON THE SIXTH CAUSE OF ACTION (42 U.S.C. § 1983) SUBSTANTIVE DUE PROCESS (Fourteenth Amendment)**

41.     For general and special damages;

42.     For pain and mental anguish suffered by STEVEN;

43.     For a preliminary and permanent injunction compelling COUNTY to segregate mentally impaired inmates from general population inmates;

44.     For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

45.     For punitive damages;

46.     For attorney fees pursuant to 42 U.S.C. § 1988;

47.     For costs of suit; and

48.     For such other and further relief as the court deems proper.

**ON THE SEVENTH CAUSE OF ACTION (42 U.S.C. § 1983, DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, Eighth and/or Fourteenth Amendment)**

49.   For general and special damages;

50.   For pain and mental anguish suffered by STEVEN;

51.   For a preliminary and permanent injunction compelling COUNTY to segregate mentally impaired inmates from general population inmates;

52.   For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

53.   For punitive damages;

54.   For attorney fees pursuant to 42 U.S.C. § 1988;

55.   For costs of suit; and

56.   For such other and further relief as the court deems proper.

**ON THE EIGHTH CAUSE OF ACTION (NEGLIGENCE)**

57.   For general damages suffered by Plaintiffs Jason Puskar, Alan Puskar and Linda DeSoucy;

58.   For economic damages equal to the pecuniary loss suffered by Plaintiffs Jason Puskar, Alan Puskar and Linda DeSoucy;

59.   For funeral and burial expenses suffered by Jason Puskar, Alan Puskar and Linda DeSoucy;

60.   For costs of suit; and

For such other and further relief as the court deems proper

**ON THE NINTH CAUSE OF ACTION (WRONGFUL DEATH)**

61.   For general damages suffered by Plaintiffs Jason Puskar, Alan Puskar and Linda DeSoucy;

62.   For economic damages equal to the pecuniary loss suffered by Plaintiffs Jason Puskar, Alan Puskar and Linda DeSoucy;

63.    For funeral and burial expenses suffered by Jason Puskar, Alan Puskar and Linda DeSoucy;

64.    For exemplary and punitive damages;

65.    For costs of suit; and

66.    For such other and further relief as the court deems proper.

**ON THE TENTH CAUSE OF ACTION (SURVIVAL ACTION)**

67.    For general and special damages;

68.    For pain and mental anguish suffered by STEVEN;

69.    For exemplary and punitive damages;

70.    For costs of suit; and

71.    For such other and further relief as the court deems proper.

**ON THE ELEVENTH CAUSE OF ACTION (CIVIL CODE § 52.1; BANE ACT)**

72.    For general and special damages;

73.    For pain and mental anguish suffered by STEVEN;

74.    For exemplary and punitive damages;

75.    For attorney fees pursuant to *Civil Code* § 52.1(h);

76.    For costs of suit; and

77.    For such other and further relief as the court deems proper.

**ON THE TWELFTH CAUSE OF ACTION (GOVERNMENT CODE § 845.6)**

78.    For general and special damages;

79.    For pain and mental anguish suffered by STEVEN;

80.    For exemplary and punitive damages;

81.    For attorney fees pursuant to *Civil Code* § 52.1(h);

82.    For costs of suit; and

83.    For such other and further relief as the court deems proper.

**ON THE THIRTEENTH CAUSE OF ACTION (INJUNCTION)**

84.    For a preliminary and permanent injunction compelling COUNTY to install sufficient numbers of mental-health professionals in COUNTY jails to be able to identify incoming inmates having serious mental impairments;

85.    For a preliminary and permanent injunction compelling COUNTY to provide training and supervision sufficient to enable Sheriff's deputies and jail staff to prevent the violation of Eighth Amendment rights held by mentally impaired inmates;

86.    For a preliminary and permanent injunction compelling COUNTY to segregate mentally impaired inmates from general population inmates;

87.    For a preliminary and permanent injunction compelling COUNTY to obey the consent decree and remedial plan entered in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-cv-00355-VAP (DTBx);

88.    For attorney fees pursuant to 42 U.S.C. § 1988;

89.    For costs of suit; and

90.    For such other and further relief as the court deems proper.


                                                    SKAPIK LAW GROUP



Dated: July 3, 2023                    By:   */s/ Geralyn L. Skapik*
                                                    Geralyn L. Skapik
                                                    Mark J. Skapik
                                                    Eric C. Morris
                                                    Attorneys for Plaintiffs

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3    Plaintiffs hereby demand trial by jury.

4

5                                                    SKAPIK LAW GROUP

6

7

8    Dated: July 3, 2023                    By:    /s/ Geralyn L. Skapik ___
                                                   Geralyn L. Skapik
9                                                  Mark J. Skapik
                                                   Eric C. Morris
10                                                 Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28